

# PETITION FOR REVIEW

IN THE UNITED STATES DISTRICT COURT OF COLUMBIA

GLEN CARTER,  Petitioner Case No..............

v.

NATIONAL SECURITY AGENCY

Glen Carter
c/o 102 -11 Avenue SE
Calgary AB
T2G 0X5
Canada

Case: 1:12–cv–00968
Assigned To : Kollar–Kotelly, Colleen
Assign. Date · 6/14/2012
Description: FOIA/Privacy Act

Tel : 001 403 767 2469

Pursuant to 5 U.S.C. 552(a)(4)(B) Glen Carter file this Petition for Review. Glen Carter
seek for review the administrative decision of National Security Agency for issuing a
defective Glomar response for a personal information requested under the *Freedom of
Information Act* (FOIA).

Respectfully submitted,
GLEN CARTER
c/0 102 – 11 Avenue SE
Calgary, AB
T2G 0X5
CANADA
011 403 767 2469 (Telephone)
Self represented litigant

Signature of Petitioner





UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLEN CARTER )<br><br>  Appellant )<br><br>  v. )<br><br>NATIONAL SECURITY AGENCY)<br><br>  Respondent )<br>_____) | Civil Action No._____ |

**PLAINTIFF's MEMORANDUM IN APPEAL OF ADMINISTRATIVE's AGENCY'S INTERNAL APPEAL DECISION OF SEPTEMBER 14, 2006**

## INTRODUCTION

This *Freedom of Information Act* ("*FOIA*") appeal is bought by self represented appellant, Glen Carter, challenging an administrative appeal decision issued by the FOIA Appeal Authority of the National Security Agency ("Agency") refusing him access to personal information believed to be contained in intelligence information records. The Appellant was restrained from making an access request under the *Privacy Act* since (*PA*) he is not a U.S. citizen, and his access request was therefore treated as an "all other" requester under the *Freedom of Information Act* (*FOIA*). The Appellant holds a vital and proprietary interest in this matter.

The Appellant requested the release of the following six distinct categories of personal information pertaining to various items of personal information:

 *(a) Information received from Canadian authorities in the early nineties alerting the Agency and calling for concern letters he is suspect of having written to a television Christian ministry;*

*(b) Information portraying the Appellant as a dangerous person or, in the alternative, a suspected terrorist; (c) Information relating to the cross border transfer of personal information of all descriptions to the United States;*

*(d) Information relating to the interception of the Appellant's communications of all descriptions;*

*(e) Information relating to the seeking of remedy to a suspected criminal offence;*

1

*(f) Information relating to the issuance of an order, adverse in effect, curtailing the Appellant's civil liberties in Canada, Barbados and the United Kingdom,*

*and (g) Information relating to a restriction of the Appellant's freedom of movement and the withholding of his rights and freedoms under law.*

The Agency denied the Appellant's FOIA request by improperly invoking a partial "Glomar" response. The Response letter issued by the Agency on April 20, 2012 made (a) neutral showing under Glomar as to the existence and non existence for the categories of personal information sought, and (b) a neutral showing as to the activities of the Agency in connection with this information, which it held it was authorised by statute to protect from disclosure.

The Agency however failed to state the exact set of criteria it relied on in Executive Order 12958 when invoking a Glomar and the Appellant was required to guess as to what these set of criteria may be. It also failed to state which section of the Executive Order authorised it to invoke a Glomar for materials it considered a properly a classified matter in accordance with the standards established under *Executive Order 12958*, as amended.

In fact, the Response letter at page 2. para. 3 states that the request is also denied because of the fact of the existence or non existence of the information is exempted from disclosure pursuant to the third exemption of *FOIA*. The statutes applicable on this second ground of refusal are *Title 18 U.S. Code 798*; *Title 50 U.S. Code 403 – 1* i); and *Section 6, Public Law 86-36 (50 U.S. Code 402 note)*.

In total, the Agency failed to properly invoke a Glomar and to properly support this response with applicable statutes. However the appeal decision made some attempt to cure the Agency's defective Glomar by properly stating the precise grounds on which access to responsive records, if any, was denied. However by then the Appellant's appeal had already been heard. The Appellant argues that it was unreasonable for the Agency manage its response in this fashion.

At appeal, the defective Glomar response survived. However the point must be made that this is a response that is commonly used when, quite undeniably, there lies a strong legitimate public interest to protect. This was indeed the case during the *Cold War* when the protection of state secrets was vital to the interests of national security. In this particular instance during the Cold War period the role of secret bodies like that of the Agency was to provide back up strategic support to the Central Intelligence Agency (CIA). Any intelligence information that the Agency may hold on the Appellant does not fall to this level of intelligence information to warrant a Glomar response.

Furthermore, at appeal, the information at issue was determined as having met the specific criteria and standard for classification pursuant to section 1.4 (c) and (g) of *Executive Order 12958*. Section 3.6 (a) of this Order (which was omitted from the Response letter) authorised the Agency to use a Glomar response when intelligence information is properly classified.

The administrative appeal was further disallowed pursuant to *5. U.S.C. 552 (b) (3),* which permits the withholding of matters specifically exempted from disclosure by statute. The applicable statutory provisions relied on by the Agency were Section 6 of the *National Security Act* of 1959 (*Public Law 86-36, 50 U.S.C. 402 note*); *50 U.S.C 403-1* (i) (i); and *18 U.S.C. 798.*

## STANDARD OF REVIEW

The applicable standard of review is one of reasonableness as to the Agency's use of a Glomar, and one of correctness as to its interpretation of the law when arriving at its determination.

## ISSUES AT REVIEW

The issues to be settled at the appeal are (a) did NSA properly rely on the exempt provisions of FOIA, (b) was a Glomar response standard of refusal was appropriate to the categories of personal information requested, (c) did the Agency make proper use of the general exemption review standards established in non Glomar cases, and (d) did the Agency properly meet the burden of proof required of it in order to sustain its action.

## ARGUMENT

### (a) *Did NSA properly rely on the exempt provisions of FOIA*

The Glomar response provided here amounts to a blanket exemption of personal information. It is a response that is far too oppressive and categorical in both focus and scope. The refusal of an administrative body to confirm or deny the existence of personal records relevant to the liberty and security of person of the Appellant and which may after all be open to access if they were to be found in a different environment (i.e. information within the law enforcement files of the Federal Bureau of Information ("FBI")) exceeds the permitted bounds of a Glomar response, with due care and attention to the origins, nature and function of this type of response, in so far as it relates to keeping Top secrets, and no other secret, strictly confidential.

Under *FOIA,* an agency may rely on a Glomar response when refusing to confirm or deny the existence of requested records and to the extent that the very existence or non existence of records requested of it is itself a properly classified matter pursuant to *FOIA* exemption (b) (1), properly withheld pursuant to statute under exemption (b) (3), or properly subject to another FOIA exemption. See *Phillipi v. CIA,* 546 f. 2d 1009, 1012 (D.C. Cir 1976); *Executive Order No.13, 1526, 3.6 (a),* 75 Fed eg 707, 719 (Dec 29, 2009). Given the amount of evidence the Appellant has amassed over the years on the subject matter of his access request it is very unlikely that merely confirming or denying the existence of records would reveal a classified fact, privileged communication, or information protected from disclosure by statue.

3

Glomar functions to protect legitimate government business and interests, not to hide illegal activity. It is a high standard of denial which, quite undeniably, was initially relied on by the CIA to protect a Top Secret. There can be no doubt that it serves a legitimate purpose in national security matters. However this high standard of denial is now commonly relied on by secret bodies like the Agency to refuse access to all manner of records irrespective of their varying level of importance and sensitivity, i.e. it serves to protect Top secrets, secrets and confidential information.  Confidential intelligence information which may after all be fairly innocuous is protected in the same way as a Top secret. The Appellant has some trouble with this longstanding practice employed by the Agency.

Since its import into *FOIA* for the past thirty years there have been no revisions of Glomar in any regard, and this type of response remains a high standard of denial commonly used by secret bodies when responding to requests to access intelligence information. These bodies need not conduct a search for any records it may hold on a particular subject matter and is authorised based on the categories of information requested to respond with a Glomar. This approach closes off any argument before any question is ever raised concerning the quality of untested intelligence information received by these bodies and as to whether or not it is entirely properly classified. Surely, this approach contradicts the purpose of FOIA and is similarly at odds with a *Vaughn* mandate. The established principles of FOIA would ask that a response be sufficiently detailed to withstand the rigours of judicial scrutiny.

If no question can ever be raised surrounding the classification of any intelligence information received by that the Agency, then this limits the scope of an inquiry into the matter. Since it will be open to the Appellant to raise any question regarding the classification of intelligence information at issue in judicial review proceeding (in connection with reviewable classification errors, that is), by the Agency closing off any argument in this area limits the scope of an inquiry into the matter.  A *de novo* review of the Agency's decision would therefore demand a rigorous probing of its decision as required and dictated by the principles established under *Vaughn v. Rosen.*

As mentioned earlier, the appeal decision invokes the Glomar response pursuant to statute *Title 18 U.S. Code 798*; *Title 50 U.S. Code 403-1* (i); and section 6, *Public Law 86-36* (*50 U.S. Code 403* note). But the Response letter of April 20, 2012 failed to properly identify and specify the specific provisions of *Executive Order 12938*, and to properly identify the FOIA exemptions on which the Agency based it withholding claim under exemption *(b) (3)*, and its response is thus deficient under FOIA on this front. See *5 U.S.C. 552 (b) (3)* (exempting from disclosure matters that are specifically exempted from disclosure…. if that statute - (A) (i) requested that the matter be withheld from the public in such manner as to leave no discretion on the issue; or (ii) establishes a particular criteria  for withholding or refers to particular types of matters to be withheld".

In order to properly invoke exemption *(b (3)*, the Respondent must both properly identify a specific FOIA exemption, feature this exemption and show specifically and clearly state

that the requested records fall within the category of the information exempted from disclosure by those provisions. It is requested to repeat the same action for its claim of classification with respect to *Executive Order 12958* as well. *National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties. December 6, 2011*

The Response letter fails to do either and remains empty of substantial relevant content. Moreover, the Respondent's attempt to invoke *Title 18 U.S. Code 798*; Title *50 U.S. Code 403-1 (i); and* Section 6, *Public Law 86-36 (50 U.S. Code 402 note)* without having first invoked exemption *(B) (5)* in support of its Glomar response is a mystery and finds scant support in case law. *National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties. December 6, 2011.*

Courts have upheld Glomar responses in a narrow set of circumstances and only when these responses are tethered with withholding claims under exemptions *(b) (1), (b) (3), (b) (6), and (b) (7) (c)* and exclusion *(c) (2)* .See *Nathon Fred Wesler*, Note: *"We can neither confirm nor Deny the Existence or Non-existence of Records responsive to your Request*: Reforming the Glomar Response under FOIA, 85 N.Y.U.:.Reve 381, 1389 & an 50-51 (2010). Emphasis here must again be placed on the origins, nature and role of a Glomar response and the high standard of refusal generated by it when refusing access to a Top secret. *National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties. December 6, 2011.*

*Exemption (b) (5),* which protects "inter-agency or intra agency memorandum or letters which would not be available by law to a party other than an agency in the litigation with the agency," *5 U.S. 552 (b) (5),* is intended to cover records that would be "non disc losable" under one of the established civil discovery privilege such as deliberative process and attorney word product privilege. *National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties. December 6, 2011.*
*McKinley v. Bd. of Governors of Fed Reserve ys., 647 F. 3d 331, 339-41 (D.C. Cir. 2011* (internal quotation marks omitted).

*Exemption b (5)* can not support a Glomar response because confirming or denying the fact that responsive personal records contained in intelligence information do not exist would not reveal the privilege contents of memoranda or the communications. Infact, there is no evidence that any information the CIA has revealed to date about its operations abroad has in any way harmed national security. *National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties. December 6, 2011.*

The Glomar vessel once a Top secret is now in the public domain, the CIA's secret prisons for terrorist suspects once a Top secret is now in the public domain. And in the aftermath of these two disclosures (which quite unmistakably would have been protected under a Glomar response) there is absolutely not one single shred of evidence to suggest that these revelations has in any way harmed national security. *Glomar response – Wikipedia at http://en.wikipedia.org/wiki/Golmar_response.*

The Respondent's response does not speak directly to the findings of a search the Agency conducted for the responsive records but to the broad categories of information it is under an obligation to deny. If records exist to which exemption b (5) applies, in accordance to a *Vaughn* index, the Respondent must clearly identify those records and then by way of *in camera* Affidavit evidence as seen in *Wolf v. CIA* explain why the contents of the personal records are privileged. However The Agency's Response letter failed, in the least, to properly rely on *Exemption b (5)* (a) as to the existence of the records; *Exemption b (5) (a)* can not be later used in its appeal decision to refuse access. The Agency is further unable to rely on statues in its appeal decision to support Exemption b (5) (a). *Wolf v. CIA. 473 F.3d 370, 378 D.C.Cir 2007).*

The Response letter fails to adequately justify the categorical Glomar. Infact, this letter leaps ahead and relies on statutes without first laying the proper foundation for a Glomar, so as to allow the Appellant to understand at which point the withholding claim of privileged information is based.

Since the Appellant's access request is a request for access to personal information the general concept of a Glomar is challenged under *Wolf v. CIA,* whereby a *de novo* review of the Agency's response requires this Honourable Court to order the Agency to search for responsive records and to submit a Vaughn index after doing so. *Wolf v. CIA, 473 F.3d 370 (D.C. Cir.2007) Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).* Since the Glomar response was improperly invoked in the Response letter, a Vaughn index is required to satisfy the adequacy of a search, if any, that the Agency would have conducted for records responsive to the Appellant's request. *Wolf v. CIA, 473 F 3d 370. 378 D.C.Cir 2007). Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).*

Further, the Response letter makes no attempt to distinguish between the six distinct categories of information contained in the Appellant's access request, or to explain in any way why confirming or denying any particular category of the requested records would reveal classified, privileged, or otherwise withheld information.

The Summary and conclusive rationale provided in the Response letter is not adequate justification for denying the Appellant's FOIA request on this ground, which remains access to different categories of personal information believed to be contained in intelligence information held by the Agency. *See Morley v. CIA,* 508 F.3d 1108 1126 (1) C. cir 2007 (remanding with instruction that the CIA must substantiate its Glomar response with reasonably specific detail."); *Riquelme v. CIA, 453 . Supp 2d 103, 112 (D.D.C. 2006) ("A")* Glomar response does not relieve an agency of its burden of proof." Internal quotation marks omitted). (citing *Philippi, 546 F.2d at 1013). National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties.December 6, 2011.*

When Government responds to a FOIA request "every effort should be made to segregate for ultimate disclosure aspects of the record that would not implicate legitimate intelligence operations." See *Founding Church of Scientology v. National Security agency, 610 F.2d.* The FOIA exemptions were not intended to conceal violations of law.

Quite the contrary, "the purpose of FOIA is to promote honest and open government and to assure the existence of an informed citizenry in order to hold the governors accountable to the governed. *Wilner v. National Security Agency and Department of Justice. Plaintiff's Memorandum in Opposition to Defendants' Partial Motion for Summary Judgment Regarding the Glomar Response. Civil Action No.: 07-CIV-3883 (DLC). "Nat'l Council of La Raza v. Dept of Justice, 411 F. 3d 350, 355 (2d Cir 2005)* (alteration in original) (quoting *Grand Cent P'ship. Inc v. Cuomo, 1166 F.3d 473, 478 (2d Cir (1990; se also NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 243 (1978).*

The Appellant is seeking access to personal information and not intelligence information of the Agency. The established principles of FOIA would allow for the former to be severed from the latter so as to safeguard confidential sources and so as not to reveal any details on the methods and operations of the Agency. It would therefore follow that personal information, if any, could be severed and disclosed by the Agency while at the same time keeping the intelligence information in which is resides confidential. Congressional intent requires that a proper balance between struck between the competing interests of the Appellant and those of the Agency.

A Glomar response is proper if the fact the existence or non existence of agency records is a properly classified matter falling within a *FOIA* exemption 1. However the Agency has failed to properly invoke a Glomar response in its Response letter by failing to demonstrate where in Executive Order 12958 it is authorised to invoke this response. By failing to lay a proper foundation for invoking Glomar, the Agency can not then leap ahead and rely on statutes to support its response. In the absence of a proper Glomar response, the Agency's decision becomes vulnerable to the principles of *Vaughn. Wolf v. CIA, 473 F.3d 370 (D.C. Cir.2007).*

In determining whether the existence of agency records *vel non* fits a *FOIA* exemption, courts apply the general exemption review standards established in non-Glomar cases. The appeal at bar falls to a non-Glomar case in light of the Agency's defective Glomar.

Further, the Glomar response provided in the Response letter has no basis in case law and is premised on a wrong principle in law. It lends itself to idle speculation and conjecture as to what may happen if intelligence information was to be disclosed. The amount of evidence amassed by the Appellant over the years confirming records the Agency hold on him would most certainly weaken any Glomar response it may seek to properly invoke.

In order to give proper effect to this response it must not only be (a) properly used but it must also (b) be properly supported as well. The categories and types of *personal* information (emphasis here on the term, personal) the government has collected and processed on the Appellant over the years is no secret. The existence of and official acknowledge by the Federal Bureau of Investigation (FBI), CIA and the Agency of their use of National Security Letters when providing a legal rational for the clandestine collection of various categories of personal information on a person of interest to them is a well documented fact.

Furthermore, an official acknowledgment by a municipal government in Canada (the City of Calgary, Alberta) of the existence of a security file on the Appellant and the contents of this file waives an otherwise valid Glomar claim, if any. *Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir 2007)* [W]hen information has been officially acknowledged, its disclosure may be compelled even over an agency's otherwise valid exemption claim. (citing *Fitzbiggon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990).*

The information disclosed to the Appellant by the City of Calgary speaks directly to the categories of personal information sought of the Agency. Category Four in particular seeks access to information produced by the Respondent in relation to the interception of his private communications. Having been provided with details as to the contents of the security file held on the Appellant containing a wealth of police information, shared intelligence information on the Appellant, the identities of corporate persons to whom the contents of his private communications were disclosed, the security sanction imposed against the Appellant, and other types of information on the Appellant would waive an otherwise valid Glomar response.

Category 1 of the Request seeks personal records relating to information received of the Agency from Canadian authorities in the early nineties. Based on the contents of the aforementioned security file there is sufficient information to interpret the type of personal records NSA will hold on the Appellant in this area.

The improper categorical, closed off Glomar response provided in the Agency's administrative appeal decision can not survive in light of the disclosures made to the Appellant. The official acknowledgement of the existence of the records at issue undermines the Agency's Glomar response, if any, and requires it to acknowledge whether it holds responsive personal records and to release those records forthwith or justify their withholding pursuant to the principles established under FOIA. *Wolf, 473 F. 3d at 378.*

Even notwithstanding the Appellant's knowledge of the contents of the file and records the Respondent is believe to hold on him, a Glomar response, if any, would be further undermined by the presence of the substantial weight of evidence that the Appellant has collected over the years relating to the processing of his personal information by the Agency and the CIA. In accessing whether information is properly withheld under Exemption (b) (1), courts have in the past taken account whether the information is already in the public domain. *Washington Post v. U.S. Dept of Defence., 766 F. Supp. 1, 9 (D.D.C. 1991)* ("[S]uppresion of already well publicised information would normally frustrate the pressing policies of [FOIA] without even arguably advancing countervailing considerations." (quoting *Founding Church of Scientology v. Nat'L see Agency, 610 F.2d 824, 831-32 (DC. Cir 1979).*

The CIA's authority and the Department of Defence's authority to secretly detain and imprison terrorist suspects without due process has been publicly known and officially acknowledged for nearly a decade. The FBI's terrorist watch list which is easily

accessible by both the CIA and the Agency is also a well known fact. *Founding Church of Scientology   v. National Sec Agency, 610 F.2d 824, 831 – 32 (D.C. Cir. 1979).*

Where extensive information about the subject of a FOIA request is already known to the person to whom it relates, courts require specific explanation of why formal release of information already in the public arena threatens national security. It is difficult to imagine how by merely confirming or denying the existence of personal records which are documented and form part of the acquired knowledge of the Appellant would in any way threaten national security.

The in depth knowledge the Appellant has of the systems and methods used by the Agency in concert with the CIA to process personal information responsive to his Request, the types of aircraft used by both the Agency and CIA to surreptitiously conduct aerial surveillances on the Appellant, the nature of spyware used to access his private online communications and other clandestine practices utilised by these parties demonstrate the depth and knowledge the Appellant has about the subject matter of his Request. Armed with this knowledge he is able to accurately point squarely to personal records the Agency holds on him.

The Agency has failed to convincing articulate rationale for refusing to properly confirm or deny the existence or non existence of personal records known to the Appellant, and it is difficult to imagine a credible rationale in light of the wealth of information already available to the Appellant. As seen in *Wolf* the burden of proof is with the agency to sustain its action. *Wolf v. CIA*, at page 3, para 2. The defective Glomar response in this situation runs counter not only to Executive Order 12958 but also to the language and spirit of President Obama's directive that FOIA " should be administered with a clear presumption:

*In the face of doubt, openness prevails. The Government should not keep information confidential merely because Public Officials might be embarrassed by disclosure, because of errors or abstract fears." Barack Obama, Memorandum for the Heads of Executive Departments and Agencies, Classified information and Controlled Unclassified information (May 27, 2009), http:// USA . gov/uuwPuw(["The government] must not withhold information for self serving reasons or simply to avail embarrassment."). National Security Project. FOIA Request concerning Anwar Al-Awlaki. American Civil Liberties.December 6, 2011.*

For the foregoing reasons, the Appellant respectfully request that the court uphold this Appeal and find the following:

(a) that the Agency has failed to conduct a search for records responsive to the Appellant's access request, and has failed to properly invoke a Glomar response for the various categories of personal information sought, not the intelligence information in which they may be found;

(b) that for a non Glomar case it has failed to abide by the principles established in *Wolf* by failing to provide the actual instead of speculative harm that will arise if existence of the records at issue were to be confirmed;

and (c) any further actual and not speculative harm to national defence and foreign relations that will arise if the responsive records were to be disclosed.

The learned judge of the day in *Halperin v. CIA* places the abstract, unfounded fears of a secret body like the Agency in proper context by stating:

*"Moreover, a reviewing court must take into account that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent in the sense that it describes a potential future harm."* `Halperin v. CIA, 471 U.S. 159, 179] (U.S. App. D.C. 88, 91-92).*

A burden falls to the Agency to offer proof based on affidavit evidence to plausibly explain the danger of confirming the existence of records responsive to the Appellant's Request; the existence of records *vel non* is properly classified under Executive Order 12958 when the Agency can justify the invocation of Exemption 1. *Wolf v. CIA, 473 F.3d 370 (D.C. Cir.2007).*

Access to the personal records, if any, at issue under FOIA is distinguished from access to general intelligence information under this Act, because whereby the latter has the propensity to contain state secrets the former does not follow the same fate. Information based on a set of secret operations performed on any personal information the Agency may hold on the Appellant (as is believed to hold) would not implicate operational details of the Agency, but will concern itself with the Appellant only. The vital, proprietary interest that the Appellant has in this personal information far exceeds any interest he may have in intelligence information in which it is contained.

The Appellant seeks access to key evidence to assist him in seeking a possible *Bevin* remedy for any abuse he may have suffered as the direct result of the secret processing of his personal information by the Agency and others. He has been denied access to a meaningful judicial forum for a significant period of time, and his right to liberty have been unreasonably withheld for an extensive period of time as well. He seeks the opportunity to have his day in court; to refute secret allegations raised against him and contained in the aforementioned security file and most importantly, he seeks to uncover any abuse he may have suffered over the years as a direct result of the secret processing of his personal information.

The Agency in concert with the CIA has conducted an extensive number on inquiries on the Appellant over the years. These are enquiries with the assistance of local Police which were conducted in Canada, the United Kingdom and Barbados. The Appellant has been terrorised due to the nature and character of these investigations. He has been unable to use a public washroom in peace without being followed and monitored by the authorities. This organised campaign which has been in placed against him for an

extensive period of time reached the tipping point when while in the UK his personal safety was at severe risk due to the 24/7 CIA and local police surveillance of him while in this country.

Also, at one point whilst traversing the parking lot to a supermarket in Calgary, Alberta, there was an attempted hit and run of him. He was also the target of a firework being discharged at him whilst walking in the streets of Calgary, Alberta. The Appellant seeks redress for these incidents and a proper response by the Agency to his access request will assist him to this end.

The Agency has failed to properly demonstrate that it is entitled to sustain action by maintaining public immunity from disclosure. Its refusal to, in the least, provide any information as to existence of the records sought and its improper invocation of Glomar do not fall within the scope of FOIA Exemptions. The Agency has failed to properly invoke a high standard of denial for access to personal information which may contain fairly innocuous information after all.

In any event, there has been movement since Glomar was first imported in FOIA leaning more towards government openness. This is indeed the case in the directive issued by President Obama to Heads of Executive Departments and Agencies on May 27, 2009.

As seen in *Vaughn v. Rosen* in the absence of a Glomar response the Agency is required to particularise and provide specific justification for exempting any records it may hold on the Appellant. As argued in *Cuneo v. Secretary of Defence* this justification must not consist of "conclusory and generalised allegations of exemptions, but will require a relatively detailed analysis in manageable segments. See *Cuneo v. Secretary of Defence* at para. 21. Indexation of any records the Agency may hold on the Appellant is necessary in order to properly gauge the precise basis of refusal and to reduce the matter to easily management segments. *Cuneo v. Secretary of Defence, 484 F. 2d. Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973*

The Appellant's personal information has been processed almost exclusively under the *United Kingdom's Data Protection Act (DPA,* not for, the Appellant submits, a legitimate public safety related purpose but for the sole benefit of private interests. These private interests have profited from all information derived from the Appellant's seized private communications. The five fair processing principles established under DPA will govern this processing and any claim for damages which may arise under it. Any abuse of the Appellant's personal information during this period of processing will also fall within the scope of this Act as well.

Sight must not however be lost of the very fact that any intelligence information which the Agency will hold on the Appellant (which he has no interest in accessing) will be time sensitive in nature. The automatic declassification of this information is only a matter of time. However since in the instant appeal the Appellant is not seeking access intelligence information per se but to personal information in which this information is contained, this is information which is equally time sensitive in nature as well.

(b) *whether a Glomar response standard of refusal was appropriate to the categories of personal information requested*

All categories of the information sought are about the Appellant and no other person. It is information that could quite easily be disclosed to the Agency by the FBI who in turn could have received it from a foreign source.

Based on disclosure made to the Appellant over the years as a result of the countless access requests he has made to various data controllers in Canada, the United Kingdom and Barbados over the years and based on the Appellant's own estimation, the personal information contained in the Police portion of the aforementioned file (which would include information provided by the CIA as part of a joint suspected terrorist investigation of Appellant) would be as follows:

1. *Anonymous letters he wrote in the exercise of his right to freedom of speech to various media organisations (CNN and others) and a Christian faith organisation (Crossroad Christian Communications Inc (formerly 100 Huntley Street))*

2. *Foreign information on the Appellant's at a legitimate anti-globalisation protest in Calgary.*

3. *Foreign information (aerial photographs of Appellant) on the Appellant's at a legitimate antiwar protest rally in London, England.*

4. *Evaluative opinions and views from a former employer, City of Calgary, concerning the Appellant, including allegations of him being dishonest.*

5. *Medical records*

6. *Previous schools records*

7. *Countless hours of aerial surveillance of Appellant.*

8. *Contents of intercepted emails, Ms-word documents, in house conversations and telephone conversations about the Appellant.*

9. *Corporate contacts with whom the Appellant's private communications were shared.*

The Appellant seeks the opportunity to explain the contents of the aforementioned letters and to be properly heard on this topic; to clear his name against the backdrop of malicious allegations which would have arisen as a result of these correspondences.

As seen in *Mohamed* the term "the term "national security" seems to be used as a political catch-all phrase with the sole intent to obscure an unwillingness to divulge

activities of government that are only questionably legal. See *Mohamed v. Secretary for Foreign Commonwealth Affairs*. In *Mohamed v. Jepensen Dataplan Inc*, the CIA relied on a national security defence to oppose a motion filed against a company who provided flight planning and logistical support service to the aircraft and crew on all rendition flights carried out at the behest of the CIA. In his own words the then CIA Director states:

*Disclosure of the information covered by this privilege assertion reasonably could be expected to cause serious- and in some cases exceptionally grave- damage to the national security of the United States.   Mohamed v. Secretary for Foreign Commonwealth Affairs, [2008] WWHC 2048. Mohamed v. Jepensen Dataplan Inc. [2010] EWCA (Civ) 65.*

The case was dismissed by the District court but remanded by the Court of Appeals which found that the subject matter of the action was not a state secret.

Judge Hawkins in examining the matter conducted a thorough review of state privilege by relying on the *Totten Principle – that a suit predicated on the exercise and content of a secret agreement between a plaintiff and the government must be dismissed on the pleadings because the very subject matter of the suit is secret.* He pointed out that *Tenet v. Doe* confirmed that *Totten* only prohibits suits that would necessarily reveal a secret relationship between the plaintiff and government. However in the motion at bar no such relationship exists between the plaintiffs and the government.

Judge Hawkins went on to consider the rule set out in *US v. Reynolds*. In that particular case evidentiary privilege was established that prevents discovery of secret evidence when its disclosure would harm national security. Application of the Reynolds privilege involves a 'formula of compromise' in which the court is asked to weigh the 'circumstances of the case' and the competing interest of the plaintiff against the 'danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.

The court reached the decision that while it should 'defer to the Executive on matters of foreign policy and national security in the determination that judicial control over evidence in a case cannot be abdicated to the caprice of executive officers.' The court was then required to undertake an independent evaluation of the claim of privilege to ensure the privilege properly applies. The Case of *Binyam Mohamed: National Security or National Embarrassment? Selected Works. Diane Webber*. *Totten v. United States, 92 U.S. 105 (1875)*.

The underlying principle in *US v. Reynolds* is that a claim of privilege on a national security can not be taken at face value but requires thorough careful probing for validity by the circumspect eye of the judiciary.

(c) *did the Agency make proper use of the general exemption review standards established in non Glomar cases*

The Glomar standard of denial in its original context was intended to refuse access intelligence information properly classified as a Top secret, so as to deter any unauthorised disclosure of vital national security interests. The personal information sought is not held to the standard. This is information that could easily find home in FBI law enforcement files. The environment in which this file may be found does not add to or take away the various categories of personal information contained within it.

A claim to state privilege goes back to 1861 in *Totten v. United States*, and there can be no doubt that this claim does have a rightful place in protecting legitimate government interests. However, as seen at para. 17 of *United State v. Reynolds* it is not a claim that can be invoked lightly. A duty therefore falls to this court as mandated in *United States v. Reynolds* to conduct an assessment to see whether the circumstances of the appeal at bar are appropriate for the defective Glomar issued by the Appellant. *United States v. Reynolds* at para. 20.

*United States v. Reynolds* is instructive in deciding that where there is a strong showing of necessity, the claim of privilege should not be lightly accepted. However this approach is balanced by the very fact that most compelling necessity can not overcome the claim of privilege when this privilege is properly claimed. *United States v. Reynold, at para. 25*.

*United States v. Reynolds* is guided by the resounding principle that a complete abandonment of judicial control over evidence in a case would lead to complacency and intolerable abuses. This very same principle is applicable to the instant appeal at bar whereby a duty falls to the Agency to prove to this Honourable that it is entitled to invoke a Glomar response (properly or improperly) when answering the Appellant's personal information access request. *United States v. Reynolds*, at para. 22.

The Agency through its failure to search for and index any responsive records it may hold on the Appellant has failed to demonstrate a causal connection of the personal records sought and foreign intelligence information it which it is contained. It is quite possible for any personal information that the Agency may hold on the Appellant to have been provided to it by the FBI, and that it need not have been disclosed by a foreign state.

The question to be decided and settled at this appeal is whether the Agency has made a valid claim of privilege for FOIA Exemptions 1 and 3 to apply, with due consideration to the established principles of FOIA, Congressional intent and the information rights of the Appellant.

(d) *did the Agency properly meet the burden of proof required of it in order to sustain its action.*

A claim of exemption under *FOIA* on the grounds of national defence and foreign relation matters places an exceptional burden of proof on the Agency. It is required to subject itself to a detailed analysis as to the basis of its claim of this privilege. Affidavit evidence is required to find the appropriate facts in its favour for sustaining its action.

Unless sound evidence is provided to satisfy this Honourable Court of this claim then the principles established under FOIA and Congressional intent must have force and prevail.

After examining the use of state secret privilege by US government writer, Gary Wills, saw a vast increase of these secrets in recent years. It was invoked in five cases between 1952 and 1977, in sixty two cases between 1977 and 2001 and in thirty nine cases between 2001 and 2005. The increase in numbers speak for themselves.

Wills suggested that the inappropriate use of state secrets privilege in cases that do not concern national security is something that is not entirely new. He states:

*It has long been suspected, and even asserted by those in a position to know that the withholding of privilege information is a very convenient way to cover up executive crimes and bungling.*

Wills cites Attorney General Brownell telling President Eisenhower in 1953 that

*"classified procedures were broadly drawn and loosely administered as to make it possible for government officials to cover up their mistakes and even their wrongdoing under the guise of protecting national security."*

Wills also cites an article by Erwin Griswold in which he said that there was no state secrets in the Pentagons Papers case,:

The principle concern of the classifier is not with national security, rather with governmental embarrassment of one sort or another. The Case of *Binyam Mohamed: National Security or National Embarrassment? Selected Works. Diane Webber.*

The Appellant seeks access to the details of personal information already know to him. Confirming or denying whether the government hold personal information on the Appellant would not require government to disclose any legitimate operational activities of the Agency. Since this is information that can be severed from intelligence information which will contain such operational details, the Agency can provide a satisfactory response to the access request whilst at the same time protecting legitimate state secrets. However with there being no evidence that the Agency has conducted a search for the responsive personal information, this Court would be just to remand that it does so and provide an index of any records found.

Since the potential for abuse of a Glomar response is strong, this Court would be just to remand that the Agency provide Affidavit evidence to demonstrate the grounds for its sustained action.

There can be no question that politics should trump the law when real national security issues (preferably with the same level of sensitivity as that seen when a Glomar was first used by the CIA to refuse access to a Top secret) are at stake and where sources and intelligences have to be protected for legitimate reasons, but all too common the knee-

jerk claim of national security, or state secrets is a cover-up for what government has done on the fringes of the law. *The Case of Binyam Mohamed: National Security or National Embarrassment? Selected Works. Diane Webber.*

The Appellant has suffered much loss over the years as a direct result of the secret set of operations performed by the Agency in concert with the CIA on his personal information. He seeks access to key evidence which will assist him in having access to a meaningful judicial forum for which he has been denied for an unreasonable period of time.

As Lord Hope Craighead states in *A and others v. Secretary of State for Home Department*:

*"The slow creep of complacency must be resisted  If the rule of law is to mean anything, it is in cases such as these that the case must stand by principle  It must insist that the person affected be told what is alleged against him "*

*A and others v. Secretary of State for Home Department*, 2004 UKHL 56

## CONCLUSION

Because of the contents of a security file disclosed to the Appellant and based on the Agency's improper invocation of a Glomar response, the Agency has failed to properly demonstrate that it has valid claim to privilege for FOIA Exemptions 1 and 3 to apply.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GLEN CARTER | ) | |
| | ) | |
| Appellant | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| NATIONAL SECURITY AGENCY | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |

**PLAINTIFF's MEMORANDUM IN APPEAL OF ADMINISTRATIVE's AGENCY'S INTERNAL APPEAL DECISION OF SEPTEMBER 14, 2006**

Glen Carter
Self Represented Litigant
c/o 102 – 11 Avenue SE
Calgary, AB
T2G 0X5

Dated: April 24, 2012
Calgary, Aberta, Canada

TABLE OF CONTENTS

Page No

INTRODUCTION…………………………………………………………… 1

STANDARD OF REVIEW………………………………………………….. 3

ISSUES AT REVIEW………………………………………………………...3

ARGUMENT……………………………………………………………….3

A.  Did NSA properly rely on the exempt provisions of FOIA…………………… .3

B. whether a Glomar response standard of refusal was appropriate to the categories of personal information requested………………………………………………………… 11

C. did the Agency make proper use of the general exemption review standards established in non Glomar cases……………………………………………………………13

D. did the Agency properly meet the burden of proof required of it in order to sustain its action………………………………………………………………………………………14

CONCLUSION…………………………………………………………………..16

18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cuneo v. Secretary of Defence, 484 F. 2d 1086*

*Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990)*

*Halperin v. CIA, [471 U.S. 159, 179] (U.S. App. D.C. 88, 91-92)*

*Founding Church of Scientology v. NSA, 610 F.2d 824 (D.C. Cir. 1979.*

*McKinley v. Bd. Governors of Fed. Reserve Sys., 647 F 3d 331, 339-41 (D.. Cir 2011)*

*Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir 2007)*

*Nat'l Council of La Raza v. Dept of Justice, 411 F. 3d 350, 355 (2d Cir. 20)*

*NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 243 (1978).*

*Phillipi v. CIA, 546 f. 2d 1009, 1012 (D.C.Cir 1976)*

*Riquelme v. CIA, 453 F. Supp 2d 103, 112 (D.D.C. 2006).*

*Totten v. United States, 92 U.S. 105 (1875)*

*Washington Post v. U.S. Dep't of Defence, 766 F.Supp 1, 9 (D.D.C. 1991)*

*Wolf v. CIA, 473 F.3d 370 (D.C. Cir.2007)*

## STATE CASES

*Grand Cent P'ship. Inc v. Cuomo, 1166 F.3d 473, 478 (2d Cir. (1999).*

*United States v. Reynolds, 345 U.S.1 (1953).*

*Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973*

## DOCKETED CASES

*Wilner et al v. National Security Agency and Department of Juctice, Civil Action No. 07-CIV-3883 (DLC).*

## BRITISH CASES

*A and others v. Secretary of State for Home Department, 2004 UKHL 56*

*Mohamed v. Jepensen Dataplan Inc [2010] EWCA (Civ) 65*

## OTHER

The Case of *Binyam Mohamed: National Security or National Embarrassment? Selected Works. Diane Webber*

## FEDERAL STATUTES

*5 U.S.C. 552 (b) (1 (emphasis added)*

*5 U.S.C  552 (b) (3)*

*Freedom of Information Act*

*Title 18 U.S. Code 798; Title 50 U.S. Code 403 – 1* i)

*Section 6, Public Law 86-36 (50 U.S. Code 402 note*).

*Executive Order 12958*

## BRITISH STATUTES

*Data Protection Act 1998*